UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**      IN CHAMBERS

    Before the Court are three Motions for Judgment on the Pleadings: (1) a Motion filed by Plaintiffs Douglas Smith and Paul Homstad (Docket No. 39), (2) a Motion filed by Defendant Teamsters Local 2010 (hereinafter "Defendant Union") (Docket No. 38), and (3) a Motion filed by Defendants Attorney General of California Xavier Becerra, The Board of Trustees of the California State University, and State Controller of California Betty Yee (hereinafter "State Defendants") (Docket No. 40). Defendant Union and State Defendants filed Oppositions to Plaintiffs' Motion (Docket Nos. 41 and 42), and Plaintiffs filed Reply briefs in support of their Motion (Docket No. 48 and 49). Plaintiffs filed Oppositions to Defendants' Motions (Docket Nos. 43 and 44), and Defendants filed Reply briefs in support of their respective motions (Docket Nos. 45 and 47). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for November 25, 2019, is vacated, and the matters taken off calendar.

    For the reasons discussed below, the Court finds that Plaintiffs have failed to establish their alleged injuries arise from state action. In addition, even if Plaintiffs were able to prove state action, they would still fail to show their First Amendment rights have been violated. The Court therefore dismisses Plaintiffs' 42 U.S.C. § 1983 claims with prejudice. The Court also declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and dismisses them without prejudice.

    **I.**    **Background**

    Plaintiffs are state employees who work at The California State University, San Bernardino ("CSUSB" or "CSU"). (Compl. ¶¶16, 27.) Their exclusive representative for collective bargaining is Defendant Union. (Id. ¶¶10-11.) During each pay period, Defendant State Controller Yee deducts union dues from Plaintiffs' paychecks and sends them to Defendant Union. (Id. at ¶¶17, 28.) The dues deductions are made pursuant to Article 7.20 of the Collective Bargaining Agreement ("CBA") between Defendant Union and The CSU:

    The CSU agrees to advise the State Controller's Office (SCO) to deduct

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

> and transmit to Teamsters Local 2010 all authorized deductions from all Teamsters Local 2010 members within Unit 6 who have signed approved authorization cards for such deduction on a form provided by Teamsters Local 2010, less necessary administrative costs incurred by the State of California. . . . The amount of dues deducted from Teamsters Local 2010's members' pay warrants shall be set by Teamsters Local 2010 and changed by the CSU upon written request of Teamsters Local 2010.

(Docket 40-2, Ex.1 at 17 (emphasis added).)  The CBA is in effect from January 26, 2016 to June 30, 2020.  (Id.)  According to California Government Code § 3583(a) (hereinafter "Section 3583(a)"), unions may adopt security provisions like Article 7.20 so long as the arrangement is one in which "an employee may decide whether or not to join the recognized or certified employee organization, but which requires the employer to deduct from the wages or salary of any employee who does join."  Cal. Gov't Code §3583(a) (emphasis added).  "This arrangement shall not deprive the employee of the right to resign from the employee organization within a period of 30 days prior to the expiration of a written memorandum of understanding."  (Id.)

On August 31, 2017, Plaintiffs' former union voted in favor of transferring over to Defendant Union and informed public employees that this switch was "necessary to secure better contracts with CSUSB."  (Compl. at ¶18.)  In September 2017, Defendant Union's representatives asked Plaintiffs to sign membership commitment cards (hereinafter "Membership Agreement").  (Id. at ¶¶19, 29.)  The Membership Agreement contains the following language:

> YES! I want to become a member of Teamsters Local 2010 and continue to stand with my coworkers to win fair wages, benefits, and working conditions for all!  I recognize the need for a strong union and believe everyone represented by our union should pay their fair share to support our union's activities.  Therefore, I voluntarily authorize my employer to deduct from my earning and transfer to Teamsters Local 2010 an amount equal to the regular monthly dues uniformly applicable to members of Local 2010, and I agree that this authorization shall remain in effect for the duration of the existing collective bargaining agreement, if any, and yearly thereafter until a new CBA is ratified, unless I give written notice via U.S. mail to both the employer and Local 2010 during the 30 days prior to the expiration of the CBA or, if none, the end of the yearly period.  My check-off authorization will renew automatically, regardless of my membership status, unless revoked during the window period described.  My signature below strengthens our Union to win fair wages and benefits!

(Docket 39, Ex. A (emphasis added).)  Plaintiff Smith signed the Membership Agreement on September 12, 2017.  (Id. at ¶20.)  He signed because "everyone else signed the card and he was led to believe the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

Union needed 100% cooperation to effectuate the transfer." (Id.) Plaintiff Smith also alleges that the union representatives gave him "until the end of [his] lunch break, which was less than thirty minutes, to sign the forms," and the union representatives "pressured employees to sign the commitment cards in the parking lot, reiterating that they needed everyone on board." (Id. at ¶19.) Plaintiff Homstad signed the Membership Agreement on September 13, 2017. (Id. at ¶29.) He believed that "without his signature, he would not be represented by the union in collective bargaining negotiations." (Id.)

In June 2018, the Supreme Court decided the case Janus v. AFSCME, Council 31, 138 S. Ct. 2448 (2018), holding that unions cannot deduct agency fees from non-consenting non-union members. Id. at 2486. On August 15, 2018, Plaintiffs resigned because they did not agree with Defendant Union's political ideology and advocacy. (Compl. ¶¶21, 30.) Defendant Union told Plaintiffs they could only revoke their dues deductions pursuant to the provisions of their Membership Agreement, which allows them to revoke during the 30-day window before the CBA expires on June 30, 2020. (Id. at ¶¶22-23, 31-32.) Plaintiffs have requested that the dues deductions cease, but the State continues to make deductions from their paychecks for Defendant Union. (Id. ¶¶25-26, 34-35.)

Plaintiffs filed a Complaint in this Court on April 25, 2019. Plaintiffs allege that they did not consent to the dues deductions and believe they are entitled to stop paying them. (Id. at ¶37.) Plaintiffs raise two federal claims. First, Plaintiffs raise a 42 U.S.C. § 1983 claim against State Defendants on the basis that "California Government Code § 3583(a), on its face and as applied, violates Plaintiffs' First Amendment rights . . . because it authorizes and compels the state of California to deduct union dues from Plaintiffs' wages even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy." (Id. at ¶48.) Second, Plaintiffs raise a 42 U.S.C. § 1983 claim against all defendants on the basis that "[t]he CBA entered between The CSU and the Union, which restricts Plaintiffs' right to revoke the authorization to collect union dues . . . violates Plaintiffs' First Amendment rights." (Id. at ¶55.) Plaintiffs also raise two state law claims against Defendant Union for intentional misrepresentation and negligent misrepresentation. The parties have all filed Motions for Judgment on the Pleadings.

**II. Legal Standard**

Under Federal Rule of Civil Procedure 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In a motion for judgment on the pleadings, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. at 1550.

Rule 12(c) is "functionally identical" to Rule 12(b)(6) and the same standard "applies to motions brought under either rule." Cafasso ex rel. United States v. General Dynamics C4 Systems, Inc., 637

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | | Date | December 3, 2019 |
|---|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | | |

F.3d 1047, 1054 n.4 (9th Cir. 2011). Therefore, whether brought under Rule 12(b)(6) or Rule 12(c), the pleadings must satisfy the "plausibility standard" in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). Indeed, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Id. at 561 (internal quotation omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 664 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

**III.    Discussion**

    **A.    Judicial Notice**

As an initial matter, the Court addresses State Defendants' Request for Judicial Notice in support of their Motion. (Docket No. 40-2.) State Defendants ask for judicial notice of two documents: (1) the CBA between Defendant Union and The CSU; and (2) Senate Bill No. 866. (Id. at 1.) Plaintiffs raised no objections in their Opposition. "When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'" Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 981, n .18 (9th Cir. 1999) (citation omitted). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts have taken judicial notice of CBAs. See Jones v. AT&T, 2008 U.S. Dist. LEXIS 119873, at *6-7 (N.D. Cal. Mar. 31, 2008). When the authenticity of the CBA is unquestioned and both parties rely on it, this further weighs in favor of granting judicial notice. See Jones v. United Steelworkers, 2013 U.S. Dist. LEXIS 138881, at *5-6 (E.D. Cal. Sept. 26, 2013); Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) ("[D]ocuments not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."). In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

addition, courts have taken judicial notice of legislative materials. See, e.g., Daghlian v. DeVry Univ., Inc., 461 F. Supp. 2d 1121, 1145 (C.D. Cal. 2006) (taking judicial notice of California Senate Bill 967 because it was a matter of public record not subject to reasonable dispute). For these reasons, the Court grants State Defendants' Request for Judicial Notice.

### B. Sovereign Immunity

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [Supreme Court] cases have extended the Amendment's applicability to suits by citizens against their own States." Id. Additionally, "[t]he Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (quotations and citations omitted). The "general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Id. (quotations and citation omitted). "[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." Id. at 101-02 (quotations and citation omitted). However, "[t]he Supreme Court recognized an important exception to this general rule in Ex parte Young . . . which held that the Eleventh Amendment does not bar suit against a state official acting in violation of federal law." NRDC v. Cal. Dep't of Transp., 96 F.3d 420, 422 (9th Cir. 1996) (citing Ex parte Young, 209 U.S. 123, 159-60 (1908) and Pennhurst, 465 U.S. at 102-03). The Ex parte Young exception "is narrow: It applies only to prospective relief, [and it] does not permit judgments against state officers declaring that they violated federal law in the past." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). For the exception to apply, "[t]he state official must have some connection with the enforcement of the act [being challenged]. That connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 943 (9th Cir. 2013) (quotations and citation omitted); see also Ex parte Young, 209 U.S. at 157. The state official's "connection must be determined under state law depending on whether and under what circumstances a particular defendant has a connection with the challenged state law." Snoeck v. Brussa, 153 F.3d 984, 986 (9th Cir. 1998).

Here, Plaintiffs seek declaratory and injunctive relief on the basis that State Defendants have violated the First Amendment by deducting union dues from Plaintiffs' wages. (Compl. ¶¶48, 53.) State Defendants contend that the CSU Trustees and Controller Yee have not waived their sovereign immunity and the Ex parte Young exception does not apply here. They argue "[t]he Complaint fails to state any facts showing that these Defendants have any personal role in the administration and enforcement of the laws challenged in this matter." (Docket No. 40 at 19.) However, the Complaint does allege that "the state law purportedly 'requires' State Controller Yee to deduct dues from Plaintiffs' wages and remit them to the Union." (Compl. ¶7.) The Complaint also alleges that "CSU violates the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

First Amendment and 42 U.S.C. § 1983 when it orders Yee to take union dues from Plaintiffs' earnings and then remit the money to the Union." (Id. at ¶61.) Based on these allegations, The CSU and the State Controller are directly involved in executing the dues deductions. Without additional evidence regarding the full extent of their involvement, the Court is unable to determine whether the Eleventh Amendment bars Plaintiffs' claims at this stage in the proceedings. The Court therefore proceeds to address the merits of this case.

        **C.**        **State Action**

To prove a §1983 violation, Plaintiff must demonstrate that the Defendants: "(1) deprived them of a right secured by the Constitution, and (2) acted under color of state law." Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). "The state-action element in §1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quotations and citation omitted). "[C]onstitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 994 (9th Cir. 2013) (emphasis in original). However, "[u]nder § 1983, a claim may lie against a private party who 'is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" Degrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) (quoting Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)). "[A] bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege 'facts tending to show that [the private party] acted 'under color of state law or authority.'" Id. (quoting Sykes v. State of Cal., 497 F.2d 197, 202 (9th Cir. 1974)); see also Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008). Courts use a two-prong framework to analyze "when governmental involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which the plaintiff complains." Ohno, 723 F.3d at 994. First, the Court considers "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Id. Second, the Court considers "whether the party charged with the deprivation could be described in all fairness as a state actor." Id.

        **1.**        **Whether Plaintiffs' Alleged Harm Results From the Exercise of a Right or Privilege Created by the State or a Rule Imposed by the State**

Plaintiffs allege that their harm stems from Section 3583(a) and the CBA. Specifically, Plaintiffs argue that Section 3583(a) "authorizes and compels the state of California to deduct union dues from Plaintiffs' wages even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy." (Compl. ¶48.) But the plain language of Section 3583(a) does not support this argument. Under Section 3583(a), a permissible form of union security may be "[a]n arrangement pursuant to which an employee may decide whether or not to join the recognized or certified employee organization, but which requires the employer to deduct from the

Case 5:19-cv-00771-PA-FFM   Document 51   Filed 12/03/19   Page 7 of 13   Page ID #:694

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

wages or salary of any employee who does join." Cal. Gov't Code §3583(a) (emphasis added). The statute clearly recognizes that some individuals may decline union membership altogether, and thus would not be subject to dues deductions. See also Cal. Gov't Code §3565 ("Higher education employees shall also have the right to refuse to join employee organizations . . . ."). Moreover, the statute does not allow the State to deduct union dues from an individual who has not already consented to union membership. Therefore, the Court is unconvinced that Section 3583(a) imposes a rule that has caused Plaintiffs to experience a constitutional violation.

Plaintiffs also argue that the CBA between Defendant Union and The CSU "restricts Plaintiffs' right to revoke the authorization to collect union dues" and therefore violates their First Amendment rights. (Compl. ¶55.) "The general rule that unions are not state actors is not discarded merely because of the existence of a CBA negotiated with a government entity." Bain v. California Teachers Association, No. CV 15-02465 SVW (AJWx), 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016). "Courts have regularly rejected attempts to find state action in the internal decisions of unions even when they are given exclusive bargaining authority by state law." Id. (collecting cases). Here, the CBA's union security provision says that dues deductions will be "authorized" by union members "who have signed approved authorization cards for such deduction on a form provided by Teamsters Local 2010." (Docket 40-2, Ex.1 at 17.) And the Membership Agreement contains a provision that limits Plaintiffs' ability to revoke dues deductions to a 30-day window before the CBA expires. Thus, the harm that Plaintiffs complain of actually stems from the Membership Agreements they signed—which is a wholly private agreement that cannot be traced back to "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state." Ohno, 723 F.3d at 994. State Defendants played no role in encouraging Plaintiffs to sign the Membership Agreements. Nor were Plaintiffs required to sign the Agreements as a condition of their employment with The CSU. Moreover, Plaintiffs have presented no allegations that State Defendants required Defendant Union to include the dues deduction provisions in the Membership Agreements. (See Compl. ¶ 45 ("The Union drafted the dues deduction provisions and inserted them into the fine-print of its union membership form. The Union presented these membership forms as take-it -or-leave-it form contracts.").)

Additionally, Plaintiffs argue there is state action because "[t]he State here is a party to the authorizations signed by Plaintiffs" and "the State is included in the membership agreement terms signed by the Plaintiffs." (Docket No. 43 at 19-20). However, the Membership Agreement simply contains the phrase, "I voluntarily authorize my employer to deduct from my earnings." (Id. at Ex. A.) The fact that the State performs a ministerial function of collecting Plaintiffs' dues deductions does not mean that Plaintiffs' alleged harm is the result of state action. "Automatic payroll deductions are the sort of ministerial act that do not convert the Union Defendants' membership dues and expenditures decisions into state action." Bain, 2016 WL 6804921, at *8; see also Caviness, 590 F.3d at 817 ("[A]ction taken by private entities with the mere approval or acquiescence of the State is not state action") (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999)); Belgau v. Inslee, 359 F. Supp. 3d 1000, 1015 (W.D. Wash. 2019) ("The State Defendants' obligation to deduct fees in accordance with the authorization 'agreements does not transform decisions about membership requirements [that they pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

dues for a year] into state action.'") (quoting Bain, 2016 WL 6804921, at *7). Defendant Union—not State Defendants—has discretion to make changes and cancellations to dues deductions, and thus is responsible for any alleged harm stemming from the deductions. Under California law, "[e]mployee requests to cancel or change deductions for employee organizations shall be directed to the employee organization, rather than to the Controller." Cal. Gov't Code §1153(h). In addition, "[t]he Controller shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed." Id.

Finally, Plaintiffs' reliance on wage garnishment cases to support their argument is misplaced. (See Docket No. 43 at 20.) Wage garnishment imposed by a court is wholly different than union dues deductions that Plaintiffs have voluntarily consented to by signing Membership Agreements. Plaintiffs' citations are not persuasive. See Jackson v. Galan, 868 F.2d 165, 167 (5th Cir. 1989) (plaintiff received no prior notice before sheriff and court clerk garnished her wages); Sniadach v. Family Fin. Corp., 395 U.S. 337, 340 (1969) (plaintiff received no notice or an opportunity to be heard regarding prejudgment wage garnishment, "which may impose tremendous hardship on wage earners with families to support"); N. Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606 (1975) (statutory garnishment procedure violated due process because writ of garnishment was issued "without notice or opportunity for an early hearing and without participation by a judicial officer."). The Court finds that Plaintiffs have failed to satisfy the first prong of the state action analysis.

### 2. Whether Defendant Union is a State Actor

Even if Plaintiffs were able to satisfy the first prong of the state action analysis, they would still fail to satisfy the second prong requiring the Court to determine "whether the party charged with the deprivation could be described in all fairness as a state actor." Ohno, 723 F.3d at 994. "The Supreme Court has articulated four tests for determining whether a [non-governmental person's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." Id. at 995 (quotations and citations omitted). Plaintiffs have not shown that Defendant Union is a state actor under these tests.

#### i. Public Function Test

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 924 (9th Cir. 2011) (quotations and citation omitted). "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." Lee v. Katz, 276 F.3d 550, 555 (9th Cir. 2002) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982)). "'[V]ery few' functions fall into that category." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1929 (2019) (citation omitted) (collecting cases rejecting "public function" challenges to private conduct).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

Plaintiffs have made no showing that Defendant Union was endowed by State Defendants with power or functions that are inherently governmental. Neither Section 3583(a) nor the CBA bestows Defendant Union with authority that would be traditionally reserved to the State. Defendant Union has merely been functioning as a union. Moreover, Plaintiffs' alleged harm stems from their Membership Agreement with Defendant Union—and this private contract contains no information that suggests the State has endowed Defendant Union with certain powers related to making dues deductions.

Plaintiffs' counter-argument is unpersuasive. Plaintiffs argue that "the Union is performing a public function because the State has outsourced its responsibility to determine constitutionally required consent to dues deductions to the Union." (Docket No. 43 at 22.) However, Plaintiffs rely on Chicago Teachers Union v. Hudson, 475 U.S. 292 (1986), a decision that involved union collection of agency fees from non-union members. Hudson is wholly distinguishable from the present action, which involves union members who have authorized their dues deductions. Plaintiffs also rely on post-Hudson decisions that are not relevant because they involved non-union members challenging fare share deduction frameworks. See Weaver v. Univ. of Cincinnati, 970 F.2d 1523, 1538 (6th Cir. 1992) (plaintiffs were non-union members forced to pay fair share fees pursuant to CBA between employer and union; court found that "[b]oth parties to a fair share agreement must be held accountable for their responsibility to see that Hudson's commands are followed."); Wessel v. City of Albuquerque, 299 F.3d 1186, 1198 (10th Cir. 2002) (plaintiffs were non-union members who sought to void indemnification agreement). The Court finds that Plaintiffs have failed to present any evidence that Defendant Union performs a public function.

### ii. Joint Action Test

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with [the non-governmental party] that it must be recognized as a joint participant in the challenged activity." Ohno, 723 F.3d at 996 (quotations and citations omitted); see also Hovan v. United Brotherhood of Carpenters & Joiners, 704 F.2d 641, 645 (1st Cir. 1983) ("The mere fact that the federal government may have encouraged the development of trade unions and collective bargaining . . . does not mean that it has become a joint participant in the general activities of individual unions. To adopt a contrary position, as previously pointed out, would 'constitutionalize' virtually every activity of a union.").

The Court is unconvinced that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights" here. Ohno, 723 F.3d at 996. There is no evidence that Section 3583(a) facilitates joint action between the State and Defendant Union. The plain language of Section 3583(a) merely acknowledges that unions may enter into dues-maintenance agreements with their members, and that members "may decide whether or not to join" the union. In addition, the CBA's plain language does not provide a sufficient basis to find joint action. Article 7.20 of the CBA states that "The CSU agrees to advise the State Controller's Office (SCO) to deduct and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

transmit to Teamsters Local 2010 all authorized deductions." (Docket 40-2, Ex.1 at 17.) As discussed above, the State performs a ministerial function in processing dues deductions and lacks any discretion to unilaterally change or cancel the deductions. See Cal. Gov't Code §1153(h). If The CSU and State Controller had not been designated to facilitate the dues deductions, Defendant Union would still attempt to collect dues based on the signed Membership Agreements. Compare Belgau v. Inslee, 359 F. Supp. 3d 1000, 1014 (W.D. Wash. 2019), appeal docketed, No. 19-35137 (9th Cir. Feb. 20, 2019) (finding no joint action because "[e]ven in the absence of RCW 41.80.100 or Article 40 of the CBA, the Union could attempt to enforce the agreements to pay dues independently, in a breach of contract action. RCW 41.80.100 and Article 40 of the CBA only require the State Defendants to perform an administrative task—after the Plaintiffs provided express written authorization for dues to be paid for a year, the State Defendants are to deduct those dues and send them to the Union."). Thus, the State's role in collecting dues deductions does not amount to "significant assistance" that warrants a finding of joint action. Ohno, 723 F.3d at 996. Finally, Plaintiffs have not presented any facts, evidence, or argument that State Defendants were involved in drafting, or encouraging Plaintiffs to sign, the Membership Agreement.

Plaintiffs argue that the State "blindly accept[s] the Union's word regarding whether an employee must pay dues and then enforc[es] the Union's interpretation of whether an employee has provided valid consent." (Docket No. 43 at 25.) Plaintiffs only cite Cook v. Brown, 364 F.Supp. 3d 1184 (D. Or. 2019), for support, but this case is unpersuasive because it involved compulsory fees enforced against non-union members. The Court finds there is no joint action here.

### iii.    State Compulsion Test

Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Caviness, 590 F.3d at 816 (quotations and citations omitted). There has been no showing that the State compelled Plaintiffs to join Defendant Union, or compelled Defendant Union to include dues deduction provisions in the Membership Agreement. In fact, Plaintiffs presented no evidence or arguments regarding this test. (Docket No. 43 at 16). The Court finds there has been no state compulsion in this case.

### iv.    Governmental Nexus Test

"Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Ohno, 723 F.3d at 996, n.13 (quotations and citation omitted). Section 3583(a) does not dictate certain actions that Defendant Union must take when it incorporates dues deductions provisions into its Membership Agreement. Moreover, there has been no showing that the State was involved in drafting the Membership Agreements, or in securing Plaintiffs' consent to become members. Here again Plaintiffs have failed to present any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

arguments regarding this test. (Docket No. 43 at 16.) The Court finds no governmental nexus here.

Plaintiffs have not satisfied the second prong of the state action analysis. Because the Court cannot rightfully call Defendant Union a state actor or attribute its actions to the State of California, the Court dismisses all claims against Defendant Union.

### C.     First Amendment Violation

Even if Plaintiffs could survive the station action analysis, they would still fail to show that their First Amendment rights have been violated. The Supreme Court has made clear that a person can contract away and waive his or her First Amendment rights. See Cohen v. Cowles Media Co., 501 U.S. 663, 672 (1991) ("[T]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law."). The recent Ninth Circuit decision Fisk v. Inslee is instructive. See 759 Fed. Appx. 632, 633 (9th Cir. 2019). Appellants signed union membership agreements that authorized their union to deduct dues for one full year. The agreements included a 15-day opt-out window each year. When Appellants resigned, the union continued to make dues deductions until the full year passed or the 15-day window arrived. Appellants filed suit, arguing that their First Amendment rights were violated because they were unable to immediately stop making dues payments when they resigned. The Ninth Circuit disagreed, holding in relevant part:

> Appellees' deduction of union dues in accordance with the Membership Agreements' dues irrevocability provision does not violate Appellants' First Amendment rights. Although Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law. Cohen v. Cowles Media Co., 501 U.S. 663, 668-71, 111 S. Ct. 2513, 115 L. Ed. 2d 586 (1991). The provisions authorizing the withholding of dues and making that authorization irrevocable for certain periods were in clear, readable type on a simple one-page form, well within the ken of unrepresented or lay parties. Moreover, temporarily irrevocable payment authorizations are common and enforceable in many consumer contracts—e.g., gym memberships or cell phone contracts—and we conclude that under state contract law those provisions should be similarly enforceable here.

Id. at 633-34. The same reasoning applies here. Under the CBA, dues deductions are only made when union members "have signed approved authorization cards for such deduction on a form provided by Teamsters Local 2010." (Docket 40-2, Ex.1 at 17.) The Membership Agreement contains a clear, voluntary authorization for dues deductions: "I voluntarily authorize my employer to deduct from my earning and transfer to Teamsters Local 2010 . . . and I agree that this authorization shall remain in effect

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

for the duration of the existing collective bargaining agreement, if any, and yearly thereafter until a new CBA is ratified, unless I give written notice via U.S. mail to both the employer and Local 2010 during the 30 days prior to the expiration of the CBA or, if none, the end of the yearly period." (Docket No. 43, Ex. A.) Because Plaintiffs gave their express written consent when they signed the Membership Agreements in September 2017, they effectively waived their First Amendment rights. Plaintiffs have not presented any evidence that they were forced to sign the Agreements against their will, or forced to sign as a condition of their continued employment at CSUSB. Plaintiffs could have ultimately declined to join Defendant Union altogether, but instead they consented to becoming members and paying dues.

      Plaintiffs argue that Janus should be interpreted to govern their claims. (Docket No. 39 at 14-15.) Janus stands for the proposition that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." Janus, 138 S. Ct. at 2486. "By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed." Id. Janus is distinguishable from the present case because Plaintiffs consented to dues deductions when they signed the Membership Agreement and became union members. Conversely, Janus never agreed to become a union member and never agreed to pay union fees. Numerous district courts throughout this Circuit have declined to extend Janus to cover union members who voluntarily signed membership agreements but then resigned in the wake of Janus with the goal of immediately revoking their dues deductions. See, e.g., Belgau, 359 F. Supp. 3d at 1016 (granting defendants' motions for summary judgment and holding, "Janus does not apply here—Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here."); Babb v. Cal. Teachers Ass'n, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019), appeal docketed, No. 19-55692 (9th Cir. June 18, 2019) (granting motions to dismiss); Seager v. United Teachers Los Angeles, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019), appeal docketed, No. 19-55977 (9th Cir. Aug. 14, 2019) (granting defendants' motion for judgment on the pleadings and holding that based on "the Court's prior conclusion in Babb, and the growing consensus of authority on the issue, the Court concludes that Plaintiff's First Amendment claim for return of dues paid pursuant to her voluntary union membership agreement fails as a matter of law."); Crockett v. NEA-Alaska, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019), appeal docketed, No. 19-35299 (9th Cir. Apr. 12, 2019) (granting defendants' motion to dismiss and holding that plaintiffs' "assertion that their union memberships were compelled because they should have had the option to avoid union fees altogether, as Janus now makes clear, is unpersuasive."); Anderson v.Service Empl. Int'l Union Local, 2019 WL 4246688, at *2 (D. Or. Sept. 4, 2019) (granting motion to dismiss because unions' continued deduction of union dues after members had resigned their union memberships did not violate members' First Amendment rights); Cooley v. California Statewide Law Enforcement Ass'n, 2019 U.S. Dist. LEXIS 12545, at *7 (E.D. Cal. Jan. 25, 2019) (denying plaintiff's motion for preliminary injunction and holding that "the relationship between unions and their voluntary members was not at issue in Janus."); Smith v. Bieker, et al., No. CV 18-5472 VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) (denying plaintiff's motion for preliminary injunction and holding, "Smith specifically consented for the dues deduction to continue for the full contractual period even if he resigned from the Union. Smith cannot now invoke the First Amendment to wriggle out of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-00771-PA (FFMx) | Date | December 3, 2019 |
|---|---|---|---|
| Title | Douglas Smith et al. v. Teamsters Local 2010 et al. | | |

his contractual duties."); O'Callaghan v. Regents of the Univ. of Cal., 2019 U.S. Dist. LEXIS 110570, at *8 (C.D. Cal. June 10, 2019) (denying plaintiff's motion for preliminary injunction and holding, "nothing in Janus's holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract that may limit their ability to revoke authorized dues-deductions"). Plaintiffs have not presented any compelling reason why the Court should ignore this growing case law and rule in Plaintiffs' favor. Tellingly, Plaintiffs have not identified a single decision that found a union member's First Amendment rights had been violated under similar circumstances.

The Court finds that Plaintiffs have failed to show their First Amendment rights were violated. The Court hereby dismisses all claims against State Defendants.

### D. Supplemental Jurisdiction Over State Claims

The Court may decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims because "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) overruled on other grounds by Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quotations and citation omitted); see also De La Torre v. CashCall, Inc., 2019 U.S. Dist. LEXIS 18624, at *12 (N.D. Cal. Feb. 5, 2019) ("The elimination of federal claims does not automatically deprive district courts of subject matter jurisdiction over any supplemental state law claims. . . . However, [c]omity and precedent in this circuit strongly disfavors exercising supplemental jurisdiction.") (quotations and citations omitted). Here, the Court has dismissed both §1983 claims and there are no other federal claims in the Complaint. The Court therefore declines to excise supplemental jurisdiction over Plaintiffs' remaining state law claims for intentional and negligent misrepresentation. These claims are dismissed without prejudice.

### IV. Conclusion

Plaintiffs' Motion for Judgment on the Pleadings is DENIED. State Defendants' Motion for Judgment on the Pleadings is GRANTED. Defendant Union's Motion for Judgment on the Pleadings is GRANTED in part. The Court will not address Defendant Union's arguments regarding Plaintiffs' state law claims. Plaintiffs' 42 U.S.C. § 1983 claims are dismissed with prejudice. Plaintiffs' remaining state law claims are dismissed without prejudice. This action is dismissed.

IT IS SO ORDERED.